UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| DANIEL JAMES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 4:11-CV-690 CDP |
| | ) | |
| KENNETH WALLER, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## **MEMORANDUM AND ORDER**

Plaintiff Daniel James served as Municipal Prosecutor for Jefferson County, Missouri, from December 2006 until he was terminated by defendant Kenneth Waller on January 3, 2011.  Two months before the termination, Waller had become the first person elected as County Executive under the provisions of a new County Charter passed in 2008.  James alleges that Waller fired him because of his political actions and party affiliation, in violation of his constitutional and state-law rights.

I conclude that Waller and the other defendants are entitled to summary judgment on each of the plaintiff's claims.  Count I, brought under § 1983, is barred by the doctrine of qualified immunity because James' right not to be fired for political activities was not clearly established at the time of the events in this

case.  Count II, a procedural due process claim, fails because James was an at-will employee not entitled to any particular procedural protection before or after he was fired.  Count III, which purports to be based on substantive due process, fails because the conduct in this case is very far below the outrageous and conscience-shocking conduct required to support such a claim.  Finally, James concedes that his state-law wrongful termination claims against the county and Waller in his official capacity are barred by sovereign immunity, but he argues that Waller should be held liable in his individual capacity.  As James' brief recognizes, Waller was not James' employer, and so he cannot be held individually liable for wrongful termination under state law.

### Count I – First Amendment

In Count I James seeks to recover under 28 U.S.C. § 1983, claiming that the defendants violated his First Amendment rights to free speech and association.  Although the defendants deny that they terminated James for political reasons, this dispute does not preclude summary judgment because the defendants have agreed that, for purposes of this motion, the Court may assume the allegation is true.  The defendants argue that even if they terminated James for the political reasons he alleges, they still cannot be held liable under § 1983 because (1) they did not violate his constitutional rights and (2) they are entitled to qualified immunity.

The First Amendment prohibits the "wholesale" dismissal of public employees "based on their political affiliation." *Billingsley v. St. Louis County*, 70 F.3d 61, 63 (8th Cir. 1995) (citing *Elrod v. Burns*, 427 U.S. 347, 367-72 (1976) (plurality opinion)).  In *Elrod*, the Supreme Court recognized an exception to this general rule for employees who hold policymaking positions.  In *Branti v. Finkel*, 445 U.S. 507, 518 (1980), the Supreme Court refined this "policymaking exception," holding that patronage dismissals are only warranted when "party affiliation is essential for effective performance of the particular job."  In *Branti*, the Court prevented a county from dismissing its assistant public defenders solely based on political affiliation because public defenders "represent individual citizens in controversy with the State," and because "it would undermine, rather than promote, the effective performance of an assistant public defender's office to make his tenure dependent on his allegiance to the dominant political party."  *Id.* at 519–20.

In *Billingsley*, the Eighth Circuit noted that since the Supreme Court's decisions in *Elrod* and *Branti*, the lower courts have developed a variety of tests to determine whether a public employee's political affiliation can be considered an appropriate condition for the job.  These tests "have produced inconsistent and unpredictable results." *Billingsley*, 70 F.3d at 63 (quoting *Rutan v. Republican*

*Party of Illinois*, 497 U.S. 62 (1990) (Scalia, J., dissenting)).  The *Billingsley* court

considered a claim by an administrative assistant to a county council member who

alleged she had been terminated because she refused to work on her boss's

political campaign.  The court found no Eighth Circuit precedent dictating the

result in the case of the administrative assistant plaintiff.  Rather, the court

compared the "polar positions" it took in *Barnes v. Bosley*, 745 F.2d 501 (8th Cir.

1986), and *Bauer v. Bosley*, 802 F.2d 1058 (8th Cir. 1986).  In *Barnes*, the Eighth

Circuit held that a staff attorney who advised the clerk of court on personnel and

legal matters and represented the clerk in administrative and judicial proceedings

*could* be fired based on political affiliation.  In *Bauer*, the court went the other

way, holding that deputy clerks who performed ministerial duties for a court clerk

could *not* be fired for political reasons.  The *Billingsley* court summarized that:

> It is clear, then, that under *Barnes* a government worker who
> performs technical, ministerial tasks cannot be discharged based on
> his political beliefs.  *Bauer* established that a government worker who
> is in a confidential position can be dismissed on account of his
> political affiliation.  Between these two polar positions, however, a
> broad range of positions exists for where there are no clear
> guidelines.

70 F.3d at 64.  Accordingly, the court declined to decide whether the

administrative assistant could be fired because of her political affiliation and,

instead, held that because the administrative assistant plaintiff had no clearly

established right, the defendants who fired her were entitled to qualified immunity.

The doctrine of qualified immunity protects government officials "from

liability for civil damages insofar as their conduct does not violate clearly

established statutory or constitutional rights of which a reasonable person would

have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). But a state

official will not be entitled to qualified immunity if: (1) the facts alleged by the

plaintiff make out a violation of a constitutional right, and (2) that right was

clearly established at the time of the defendant's alleged misconduct. *Pearson v.

Callahan,* 555 U.S. 223, 232 (2009). A right is clearly established if a reasonable

official would understand that his or her conduct was unlawful. *Nance v. Sammis,*

586 F.3d 604, 609 (8th Cir. 2009). In considering a claim of qualified immunity,

the court may "exercise [its] discretion in deciding which of the two requirements

to address first." *Molina-Gomes v. Welinski*, 676 F.3d 1149, 1152 (8th Cir. 2012)

(citing *Pearson*).

James argues that his right to be protected from a political dismissal was

clearly established because party affiliation was not essential for effective

performance of his job as Municipal Prosecutor, and because his position was

protected by the Merit System of the Jefferson County Charter. He points to

- 5 -

*Shockency v. Ramsey County*, 493 F.3d 941, 951 (8th Cir. 2007), which held that the First Amendment protected the plaintiff deputy sheriffs from being fired for exercising their First Amendment rights in part because they were considered "classified service" employees under Minnesota law, which specified that such employees were hired based on merit and could not be required to participate in political activities. *Id.* at 951. This argument might have some appeal if in fact James was a Merit System employee under the County Charter as he claims, but the undisputed evidence shows that he was not, and that the Merit System did not even exist at the time he was fired.

The voters of Jefferson County adopted the County Charter in November 2008, two years after James was hired. The Charter established the positions of County Executive and County Council, whose members would be first elected in November 2010.[1] The Charter did not mention the position of Municipal Prosecutor at all. It included an article titled "Personnel Administration" which contained a section titled "Merit System." That section provided that a Merit System must be implemented by July 2011:

> The County Employees Merit System Commission established by this
> Charter must, within two years after this Charter is adopted,

_____

[1] This structure replaced the three-member Commission to whom James had previously reported.

> recommend for adoption by the County Council a personnel
> administration program under the direction of the Director of
> Administration that implements policies and procedures consistent
> with this Charter and the merit system principles contained in Section
> 8.2, and *by July 1, 2011, the County Council must establish by
> Ordinance such a program*. All County employees, except those
> designated as exempt, must be covered by the Merit System *so
> established*.

(emphasis added).  The "Merit System Principles" section of the Charter set out

guiding principles such as (1) hiring and retention should be based on merit, (2)

covered employees could not be fired without just cause, and (3) covered

employees would be entitled to procedural protections.  The "Principles" indicated

that Merit System employees were entitled to participate in political activities

outside working hours, but political participation could not be a condition of

employment.  The Charter listed certain employees as exempt from the Merit

System, including all elected officers, officers appointed by the County Executive

with the advice and consent of the County Council, the County Counselor, the first

assistant Prosecuting Attorney, the undersheriff, any member of a board or

commission established by the Charter, any department head, and any

probationary or temporary employee.

The offices and procedures set out in the Charter did not spring into

existence the day the voters approved the Charter; instead, the Charter itself

- 7 -

provided a schedule for implementation of the various components of the new

system of government.  At the time James was fired, the personnel administration

procedures and the Merit System had not even been adopted by the Council, much

less implemented.  Given that they did not exist, James cannot rely on them to

show that he had a clearly established right to be free from dismissal because of

his political affiliation, and so his reliance on the *Shockency* case is misplaced.

James also argues that his right to be free from a patronage dismissal was

clearly established because party affiliation was not essential for effective

performance of his job as Municipal Prosecutor.   James asserts that his duties

were confined to the Municipal Court, and that the ethical duties of a prosecutor

require the position to be purely non-political.  He argues that it would be

unethical for a prosecutor to exercise prosecutorial discretion based on politics.

The defendants, on the other hand, argue that James's party affiliation was

essential to the job because the Chief Executive of the county should be able to set

priorities that may be tied to the Municipal Prosecutor's job duties.

To large extent, this appears to be more a philosophical dispute than a

factual one.[2]  But the parties' arguments show that this case, like that of the St.

---

[2] There is no evidence in the record that anyone has attempted to use political influence to protect categories of people from law enforcement, as James hypothesizes could happen.  But in any event, does he argue seriously that there can be no political influence on prosecutions?  Is he

Louis lawyer in *Bauer v. Bosley*, falls within the "broad range of positions . . . for where there are no clear guidelines."  In other words, any right James claims to be protected from a politically motivated termination was not clearly established, and there is no evidence showing that a reasonable official in Waller's position would have known his actions violated James' protected rights.

As discussed above,  *Pearson v. Callahan* made clear that a court did not have to follow a rigid order in deciding the two qualified immunity questions.  In this case the second of the two questions is easy to determine: under the undisputed facts of this case and the law as it existed at the time of the termination, James had no clearly established right not to be terminated because of his politics.  Defendants are thus entitled to qualified immunity on Count I, which is James' First Amendment claim.

**Count II – Procedural Due Process**

In Count II, James alleges that his procedural due process rights were violated when he was not given the procedural protections that he alleges the County Charter established.  He argues that he had a property interest in continued

---

really arguing, for example, that it would be unethical for a municipal prosecutor to follow a county council decision to focus its law-enforcement and prosecutorial resources on enforcement of, say, its trash ordinances rather than on enforcement of its noise ordinances?  This sort of argument takes up a lot of space in the parties' briefs, but it has no effect on the outcome of this case.

employment and could only be fired for just cause and after the procedural

protections of the Merit System.[3]

   "To establish a violation of procedural due process, a plaintiff must show

that he has been deprived of a constitutionally protected life, liberty or property

interest."  *Davenport v. Univ. of Ark. Bd. of Trs.*, 553 F.3d 1110, 1114 (8th Cir.

2009); *see also Board of Regents v. Roth*, 408 U.S. 564 (1972).  Whether a

plaintiff has a constitutionally protected property interest "depends on state law

and the terms of his employment."  *Kozisek v. Cnty. of Seward, Neb.*, 539 F.3d

930, 937 (8th Cir. 2008).  As discussed above, the Merit System contemplated by

the Charter did not exist until months after James was terminated.  The undisputed

evidence shows that at all times during his employment he was an at-will

employee.  *See Taylor v. St. Louis County Board of Election Commissioners*, 625

F.3d 1025, 1027 (8th Cir. 2010) ("Missouri maintains the default rule of at-will

employment for employees without employment contracts for a definite term: an

employer may discharge an at-will employee for any reason or for no reason

without liability for wrongful discharge.").  James had no contract, and there was

no merit system – or other system – in place that would have entitled him to any

---

   [3]  In his briefs James abandons any claim to a "name-clearing hearing" or other
procedural due process remedy for deprivation of a liberty interest.

particular process before or after being fired.  *See Mulvenon v. Greenwood*, 643

F.3d 653, 657–58 (8th Cir. 2011) (An employee's "subjective and unilateral

expectation" that he was entitled to continued employment is "insufficient to

create a property interest.") (internal quotation omitted).  Consequently, the

defendants are entitled to summary judgment on James' procedural due process

claim.

### Count III — Substantive Due Process

In Count III, James alleges that the defendants violated his substantive due

process rights by engaging in arbitrary and capricious conduct that shocks the

conscience.  In support of this claim, James argues that he had "a liberty and

property interest in his continued employment," and that defendants' conduct –

firing him for political reasons – shocks the conscience because Waller intended to

injure James by terminating him for reasons unrelated to his job performance.

As the Eighth Circuit reminded litigants in *Moran v. Clarke*, there is only

one theory of recovery for substantive due process claims against executive

officials like Waller, and that theory has two elements:  a plaintiff must show

"*both* that the official's conduct was conscience-shocking, *and* that the official

violated one or more fundamental rights that 'are deeply rooted in this Nation's

history and tradition, and implicit in the concept of ordered liberty, such that

- 11 -

neither liberty nor justice would exist if they were sacrificed.'" *Moran v. Clarke*, 296 F.3d 638, 651 (8th Cir. 2002) (en banc) (Bye, J. concurring and writing for a majority on this issue) (citations omitted; emphasis in the original).  Requiring this two-part showing ensures that "the theory of substantive due process is properly reserved for truly egregious and extraordinary cases." *Novotny v. Tripp Cnty, S.D.*, 664 F.3d 1173 (8th Cir. 2011).

James asserts that Waller fired him because he believed James would not "protect him politically."  Relying on *Moran v. Clarke*, James argues this was conscience-shocking conduct because Waller intended to injure James by firing him for reasons unrelated to his job performance.  *Moran*, 296 F.3d at 647 ("[C]onduct intended to injure in some way unjustifiable by any government interest is the sort of official action most likely to rise to the conscience-shocking level.") (citation omitted).  But even under James' version of the facts, there is simply no evidence that Waller intended to injure James.  Rather, the evidence shows that Waller intended to protect *himself*, not injure James, by making a personnel decision he believed was in his political best interest.  Whether or not that decision was wise is not a question within the purview of the due process clause.  *See Christiansen v. West Branch Community School Dist.*, 674 F.3d 927, 938 (8th Cir. 2012) ("The Due Process Clause of the Fourteenth Amendment is

- 12 -

not a guarantee against incorrect or ill-advised personnel decisions.") (quoting *Bishop v. Wood*, 426 U.S. 341, 350 (1976)).

As James acknowledges in his brief, the substantive due process clause is intended to protect against "severe" and "disproportionate" executive abuse "so inspired by malice or sadism" that it amounts to a "brutal and inhumane abuse of official power." *Moran*, 296 F.3d at 647.  Under James' version of the facts, Waller gave James two weeks' notice and offered to write him a favorable letter of recommendation.  James has not alleged any facts that amount to a malicious, brutal, or inhumane abuse of power sufficient to "shock the conscience."  Indeed, the defendants' conduct falls very far below the conscience-shocking level necessary to support a substantive due process claim.  Because James has not met the "conscience-shocking" prong, his claim must fail and it is not necessary for me to analyze whether the defendants violated any of James' fundamental rights.

### Counts IV and V – State Law Wrongful Discharge

James has conceded that the County and Waller in his official capacity are entitled to sovereign immunity on the state-law claims.   He argues, however, that he should have a claim against Waller in his individual capacity for wrongful discharge.  His brief recognizes that in *Taylor v. St. Louis County Board of Election Commissioners*, 625 F.3d 1025 (8th Cir. 2010), the Eighth Circuit held

- 13 -

that an employee can only bring a Missouri wrongful discharge suit against her

employer.  James concedes that under that controlling precedent a supervisor such

as Waller cannot be held liable in his individual capacity for wrongful discharge.

James admits that the County, not Waller, was his employer, but hopes that the

Missouri Supreme Court might someday decide that supervisors can be liable in

such a situation.  By his own admission, James' state-law claims against all

defendants in any capacity cannot survive summary judgment.

Accordingly,

**IT IS HEREBY ORDERED** that defendants' motion for summary

judgment [#22] is granted in its entirety.  A separate judgment in favor of the

defendant is entered this same date.

**IT IS FURTHER ORDERED** that plaintiff's motion to strike [#31] is

denied as moot.  I considered no part of the supplemental evidence to which

plaintiff objected.

CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE

Dated this 20th day of August, 2012.